[Cite as *State v. Harris*, 2011-Ohio-4066.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25364 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ERICA L. HARRIS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 09 08 2466(A) |

DECISION AND JOURNAL ENTRY

Dated: August 17, 2011

CARR, Presiding Judge.

{¶1}  Appellant, Erica Harris, appeals her conviction out of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}  This case stems from an incident that occurred on August 4, 2009, that led to the arrest of Harris. Harris was indicted by the Summit County Grand Jury on one count of sexual battery in violation of R.C. 2907.03(A)(2)/(3), a felony of the third degree; and one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree. Harris pleaded not guilty to the charges.

{¶3}  The matter proceeded to trial before the jury in January 2010. Harris was tried with a co-defendant, Dwain Johnson. At the close of the State's case, the trial court denied Harris's Crim.R. 29 motion for acquittal. Harris renewed her motion after presenting a defense, but the trial court denied the motion again. The jury found Harris guilty of sexual battery and

not guilty of gross sexual imposition. Johnson was found not guilty on both counts. The trial court sentenced Harris to two years in prison, suspended upon the condition that she complete two years of community control, and ordered her to register as a Tier III sex offender. Harris filed a notice of appeal. She raises two assignments of error for review.

II.

## **ASSIGNMENT OF ERROR I**

"THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIM. R. 29 MOTION AS THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."

{¶4} Harris argues that her conviction for sexual battery was not supported by sufficient evidence. This Court disagrees.

{¶5} Crim.R. 29 provides, in relevant part:

"(A) The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

{¶6} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 279.

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.

**{¶7}** Harris was charged with one count of sexual battery in violation of R.C. 2907.03(A)(2)/(3), which states, in relevant part:

> (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

> (2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

> (3) The offender knows that the other person submits because the other person is unaware that the act is being committed.

**{¶8}** "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶9}** R.C. 2907.01(A) defines "sexual conduct" as:

> "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another."

**{¶10}** Since "substantially impaired" is not defined in the Ohio Criminal Code, the Ohio Supreme Court has held that "it is sufficient for the state to establish substantial impairment by offering evidence at trial establishing a reduction or decrease in the victim's ability to act or think." *State v. Doss*, 8th Dist. No. 88443, 2008-Ohio-449, at ¶13, citing *State v. Zeh* (1987), 31 Ohio St.3d 99, 103-04.

**{¶11}** Harris admitted at trial that she digitally penetrated the victim's vagina. Harris argues that there was insufficient evidence to establish that the victim was substantially impaired and that, even if the State proved she was substantially impaired, there was insufficient evidence to prove that Harris knew the victim was substantially impaired. Harris also argues that the State failed to prove that the victim was unaware of the digital penetration when it occurred.

{¶12} The victim has two sons with Johnson. At the time of the incident, the victim and Johnson were not officially in a relationship, though they were still intimate. Johnson and Harris were best friends. Harris and the victim knew each other through Johnson. Harris and the victim had socialized on prior occasions and the victim had told Harris she thought she was cute. Johnson was mad that the victim was attracted to Harris, but the victim assured him nothing would ever happen. Despite a mutual attraction, the victim and Harris agreed that nothing could happen between them because of Johnson.

{¶13} On the evening of August 4, 2009, Harris called Johnson and they made plans to meet at Harris's apartment. Johnson went over to Harris's apartment and brought the victim and their two sons with him. Harris placed a mattress in the kitchen and Johnson put his sons to bed. Harris and the victim sat on a loveseat while Johnson sat in a chair.

{¶14} Harris, Johnson, and the victim proceeded to drink alcohol. The victim was drinking Long Island Ice Tea while Harris and Johnson drank liquor and beer. The victim testified that she had "[a]t least a half of a fifth of Long Island" while Johnson testified that the victim drank the whole bottle. The victim also testified that the three of them were drinking shots of the Long Island. The victim testified that she drank two shots for each shot Harris and Johnson drank, for a total of "at least five or six" shots. The victim testified that it does not take much for her to become intoxicated and that she was intoxicated. Harris even admittied at trial, "I knew [the victim] was intoxicated because we were all intoxicated."

{¶15} The victim stated that Harris and Johnson went outside twice during the night because "they needed to talk." At some point, Johnson was upset and wanted to leave, but he calmed down and stayed. The victim testified that she did not want Johnson to leave because she was "too drunk to drive" and did not want to stay at his friend's house alone. She testified that,

although she flirted with Johnson throughtout the night, she did not "even really remember talking to Erica[.]"

{¶16} The victim testified that the following chain of events occurred. She fell asleep on the couch because "it seemed like everybody was falling asleep." She woke up to find Harris "standing behind me with her arms under my arms and her hands behind my neck." The victim described how she was "kind of just hanging" and facing the couch as Johnson proceeded to remove her pants and underwear. The victim was placed back on the couch and she tried pulling her knees up to her chest. The victim stated that Harris was then "leaning her whole body up against my legs and Dwain has his hand on my arm and she put her finger in me." When asked to clarify, the victim stated that while Johnson was holding her right arm, Harris digitally penetrated her vagina without her consent. She testified that Johnson asked her, "Why are you trying to stop something you know you like?" The victim was able to get away.

{¶17} The victim started hitting Johnson, put her pants back on, and then began fighting with Harris. The victim testified that Harris started choking her, which Harris admitted at trial. Harris and the victim fell to the floor in the kitchen. Johnson pulled Harris off of the victim. The victim grabbed her kids and left the apartment.

{¶18} The victim drove back to her house and called Johnson's current girlfriend, Tonya Marcelli, on the way. The victim told Ms. Marcelli that "we had all got drunk and Erica had raped me." Ms. Marcelli called Johnson and told him about her phone call with the victim. Upon arriving home, the victim met with her neighbor and they called the police. An ambulance came and took the victim to the hospital.

{¶19} Detective Steve Mara drove the victim home from the hospital. Detective Mara's report indicated that the victim was still drunk at this time. After dropping the victim off, he

received a dispatch to Harris's apartment, because Harris and Johnson wanted to give a statement. Detective Mara recorded the statement that Harris gave, which was admitted into evidence without objection. Harris made the following admissions in her statement. She first told Detective Mara that Johnson and she "never touched [the victim]" and that "basically nothing happened." She admitted that they had all been drinking. Detective Mara then explained to Harris there would be a problem if a DNA analysis reveals that she had touched the victim. Harris then told Detective Mara that she would like to tell the truth and admitted to digitally penetrating the victim's vagina. While laughing, Harris explained, "I had my hands inside her" but said that it was not forced or rejected by the victim. Harris then admitted that the victim was "probably so drunk" and "might not have realized what was going on." At trial, Harris again admitted that she inserted her fingers into the victim's vagina that night, but asserted it was consensual.

{¶20} The victim returned to the hospital the next day and was examined by SANE (Sexual Assault Nurse Examiner) nurse Diana Shaffer. At trial, Ms. Shaffer discussed the report she created while examining the victim. In the report, Ms. Shaffer wrote that the victim told her "there was penetration of the vagina with a finger" by Harris, genital fondling, holding, and strangling. The victim told Ms. Shaffer a version of events that was very similar to the version she gave at trial. Ms. Shaffer also took pictures of the victims injuries, which showed a "linear abrasion" on the victim's neck and bruises and abrasions on her arms.

{¶21} Detective Mara interviewed the victim three times, including after she was examined by Ms. Shaffer. He testified that, except for some minor variations, the victim's story about what happened remained consistent during these interviews. The victim consistently told him that she was intoxicated, fell asleep clothed, Harris digitally penetrated her, and that the

sexual act was not consensual. He testified that "[i]t's fairly common that a person who's been in a very traumatic situation will have some differences in their statement." He added that the fact that the victim was intoxicated and just waking up at the time of the incident could be another explanation for the minor inconsistences. He also testified that the victim's third version of events was most similar to the version she testified to at trial.

{¶22} Viewing the evidence in a light most favorable to the State, this Court concludes that a rational trier of fact could have found the essential elements of the charge of sexual battery were proved beyond a reasonable doubt. See *Jenks* at paragraph two of the syllabus. Harris admitted to digitally penetrating the victim's vagina. The victim testified that she did not consent to the sexual act. Harris admitted that she, Johnson, and the victim had been drinking and she knew the victim was intoxicated. Harris further admitted to the police that the victim was probably so drunk that she did not know what was happening. The victim testified that she was intoxicated at the time of the incident and Detective Mara testified that the victim was still intoxicated after leaving the hospital a few hours later. Furthermore, the victim had been sleeping and unaware of what was occurring until she awakened to find Harris holding her. The evidence demonstrates that, between not being fully awake and being very intoxicated, the victim had a decreased ability to think, resulting in substantial impairment.

{¶23} Based on the foregoing, the State presented sufficient evidence to establish that the victim was substantially impaired and that Harris knew she was substantially impaired when she digitally penetrated her vagina. Harris's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"THE JURY CREATED A MANIFEST MISCARRIAGE OF JUSTICE AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶24} In her second assignment of error, Harris argues her conviction is against the manifest weight of the evidence.

{¶25} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing *State v. Thompkins* (1997), 78 Ohio.St.3d 380, 390 (Cook J., concurring). A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶11. Rather,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

> "Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony. Id." *State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶5.

This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶26} Harris uses the same argument that there is no evidence that the victim was substantially impaired and, if she was, there is no evidence that she knew the victim was substantially impaired.

{¶27} The victim, Harris, and Johnson all gave inconsistent testimony about what happened the night in question. They all admit that they were drinking and that the victim was intoxicated. However, they disagree on who fell asleep, whose clothes came off and how, who had conversations, and on whether Harris digitally penetrated the victim's vagina without consent.

{¶28} The victim testified that she was awakened by Harris who was holding her as Johnson was taking off her pants. She testified that Johnson held her down while Harris inserted her finger into her vagina without her consent. According to the victim, she did not take off her clothes, she did not talk to Harris during the night, and everyone went to sleep.

{¶29} Harris testified that they had all been taking off their own clothes during the night and that the victim had been flirting with her. She stated that she slowly moved her finger all the way up the victim's leg before inserting it in her vagina and that the victim was enjoying it. She testified that the victim did not reject her advances and consented to her putting her finger in her vagina. She also testified that Johnson witnessed this sexual act occur. She stated that she stopped penetrating the victim after a couple seconds, went to the bathroom, and then came out to find the victim hitting Johnson before engaging in a fight with her. She also stated that no one fell asleep at any point in time that night.

{¶30} Johnson testified that he was asleep and awakened to the victim hitting him before she started fighting with Harris. He also testified that no one took any clothes off throughout the night, but that everyone had engaged in conversation with each other. He testified that he

assumed Harris and the victim were fighting because the victim was wrecking Harris's apartment and Harris was trying to stop her.

{¶31} Although the victim changed some parts of her story in all of her interviews, this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witnesses' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, at ¶22. A thorough review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Harris, and there is no indication that the trial court lost its way and committed a manifest miscarriage of justice in convicting Harris of sexual battery. Harris, Johnson, and the victim all gave differing accounts of the events that happened on the night of August 4, 2009. While the victim changed some parts of her story, she consistently maintained that Harris digitally penetrated her vagina without consent. Detective Mara testified that it is not unusual for a victim of a traumatic event to change parts of her story. Harris's credibility was undermined given that she lied to the detective when she told him nothing happened, but then admitted that she did put her fingers in the victim's vagina after he explained the consequences of DNA testing.

{¶32} Furthermore, Harris admitted that she knew the victim was intoxicated, as the victim had drunk a large amount of Long Island Ice Tea. In her statement to Detective Mara, Harris stated that the victim probably did not know what was going on because she was drunk. The evidence demonstrates that Harris knew that the victim had a decreased ability to think due to her intoxication. Accordingly, Harris's conviction for sexual battery is not against the manifest weight of the evidence. Harris's second assignment of error is overruled.

III.

**{¶33}** Harris's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

MARTHA HOM, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.