[Cite as *Smith v. Stanley*, 2012-Ohio-2828.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

PAUL B. SMITH

    Appellee

    v.

BRIAN E. STANLEY

    Appellant

C.A. No.      11CA009997

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    10CV170341

DECISION AND JOURNAL ENTRY

Dated: June 25, 2012

---

CARR, Judge.

{¶1}    Appellant Brian Stanley appeals the judgment of the Lorain County Court of Common Pleas. This Court affirms in part and reverses in part.

I.

{¶2}    While Brian Stanley and his wife were seeking a divorce, she was involved in a relationship with Paul Smith. Mr. Smith filed a petition for a civil stalking protection order against Mr. Stanley and received an ex parte order. At the full hearing on the petition, Mr. Smith and Mr. Stanley entered into a mutual restraining order which prohibited each from abusing, threatening, harassing, annoying, or contacting the other. The ex parte civil stalking protection order was terminated.

{¶3}    Less than a month later, Mr. Smith filed an "amended petition for civil stalking order" in which he alleged that (1) on January 27, 2011, Mr. Stanley pulled out of Mr. Smith's driveway and almost ran him down, (2) on January 27, 2011, Mr. Stanley returned with a gun

and pointed it at him, and (3) on January 28, 2011, a screwdriver was found in his driveway. The trial court construed the amended petition as a motion for contempt and scheduled a hearing. At the conclusion of the hearing, the trial court found that Mr. Stanley had violated the mutual restraining order on both January 27 and 28, and ordered a 30-day jail sentence and $100 fine for each of the two violations, ordering that the jail terms would be served consecutively. The trial court then stayed the imposition of all sanctions based on the lack of further violations since early February 2011. It asserted, however, that it would vacate the stay of the two jail sentences in the event that Mr. Smith established any future violations of the mutual restraining order by Mr. Stanley. Mr. Stanley appealed, raising one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

COMPETENT CREDIBLE EVIDENCE DID NOT TO SUPPORT THE TRIAL COURT FINDINGS AND CONCLUSIONS THAT RESPONDENT-APPELLANT VIOLATED THE MUTUAL PROTECTION ORDER (CIVIL STALKING PROTECTION ORDER) ON JANUARY 27, 2011 AND JANUARY 28, 2011, AND THOSE FINDINGS AND CONCLUSIONS BY THE TRIAL COURT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THIS CASE. (sic)

{¶4} Mr. Stanley argues that the trial court's finding that he violated the mutual restraining order was against the manifest weight of the evidence. This Court agrees in part and disagrees in part.

{¶5} As a preliminary matter, we note that Mr. Stanley enunciates some law applicable to an analysis regarding whether the evidence was sufficient to support the trial court's finding. He declines, however, to develop any analysis in that regard and simply concludes that the findings are against the manifest weight of the evidence. Accordingly, we decline to address the issue of sufficiency of the evidence. *See* App.R. 16(A)(7).

**{¶6}** The Ohio Supreme Court recently clarified the civil manifest weight of the evidence standard of review. *Eastley v. Volkman*, Slip Opinion 2012-Ohio-2179. Accordingly, we apply the following review:

> When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." *Ray v. Vansickle*, 9th Dist. Nos. 97CA006897 and 97CA006907, 1998 WL 716930 (Oct. 14, 1998). "'The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict * * * and judgment, most favorable to sustaining the trial court's verdict and judgment." *Id*.

*Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

**{¶7}** Moreover,

> Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a [judgment] on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against the judgment. *Thompkins*, 78 Ohio St.3d at 387.

**{¶8}** Mr. Stanley argues that the trial court imposed a civil contempt sanction. The trial court did not characterize its sanction and, in fact, did not make an express finding of contempt. While an argument could be made that the sanction is criminal in nature, Mr. Stanley argues within the context of civil contempt and Mr. Smith does not challenge that

characterization. Accordingly, this Court reviews the matter within the context of civil contempt.

{¶9} "Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus. In a civil contempt proceeding, a finding of contempt must be premised upon clear and convincing evidence. *ConTex, Inc. v. Consolidated Technologies, Inc.*, 40 Ohio App.3d 94 (1st Dist.1988).

January 28, 2011 Violation

{¶10} This Court concludes that the punishment for the alleged January 28, 2011 violation was unwarranted for two reasons. First, the only allegation of violative conduct on January 28, 2011, did not implicate Mr. Stanley or cite conduct which could ever be construed as such which might "abuse, threaten, harass, annoy or [constitute] contact." Mr. Smith alleged the following: "Also in the morning of 1-28-11 (Today)[,] a screwdriver was found in my driveway – does not belong to me or landlady." The mere presence of a screwdriver in Mr. Smith's driveway, with no alleged connection to Mr. Stanley, cannot form the basis for abuse, threats, harassment, annoyance, or contact. Second, there was no evidence presented at the hearing regarding any screwdriver. Accordingly, a finding of contempt on the sole allegation with regard to January 28, 2011, was against the manifest weight of the evidence.

January 27, 2011 Violation

{¶11} Mr. Smith presented the testimony of three witnesses at the contempt hearing. Mr. Smith testified as follows. He moved to a house on Whitehead Road in Lagrange on January 24, 2011. On January 27, 2011, as he was arriving home before 1:00 p.m., he saw Mr. Stanley

pulling out of his driveway in what he reported to police to be a green Ford Taurus but what he later realized was a Mercury Sable. Mr. Stanley owns a green Mercury Sable. Although Mr. Smith is a mechanic, both makes and models look exactly the same to him.

{¶12} Mr. Smith testified that Mr. Stanley "swerved" towards him and drove away, holding something out the window that Mr. Smith believed to be a gun. Mr. Smith called the police at 12:43 p.m. while Mr. Stanley continued to drive back and forth in front of the house. Mr. Smith testified that Mr. Stanley repeatedly drove slowly past his house on Whitehead Road numerous times from January 27 to 29, 2011.

{¶13} Starr Piskuran-Stanley was married to Mr. Stanley during the time relevant to the alleged violations but was living with Mr. Smith and her son Cody on Whitehead Road. She testified that she and Cody were in their living room around 10:00 a.m. on January 27, 2011, when she saw Mr. Stanley drive by the home at a "normal slow speed." He then turned around and drove by again at an extremely slow rate of speed, turned around again and came almost to a stop in front of the house before driving away. She was certain it was Mr. Stanley because he "literally had the upper portion of his body outside of the car, out of the window." Mrs. Stanley called the sheriff's department to report the incident and tell them that she had a restraining order against her husband. She and her son then left to run errands and did not return until after 1:00 p.m. at which time there was a deputy's car in her driveway. Mrs. Stanley testified that Mr. Stanley drove past her house that day every hour or hour and a half.

{¶14} Cody Carroll is Mrs. Stanley's son. He testified that he was with his mother in the living room when he saw Mr. Stanley drive past the house three times around 10:00 a.m. on January 27, 2011. His mother called the police, then he and his mother left to run errands until around 1:00 p.m. He did not witness any other incidents involving Mr. Stanley that day,

although he videotaped a green station wagon drive past the house on January 29, 2011. Mr. Carroll accidentally erased the video and he did not see Mr. Stanley in the green car that day.

{¶15} Mr. Stanley testified in his own defense. He testified that he left Ohio around 5:00 p.m. on January 28, 2011, to visit friends and shop in Pennsylvania until January 31, 2011. He presented numerous receipts evidencing that he was in Pennsylvania during that time period.

{¶16} In regard to January 27, 2011, Mr. Stanley testified that his mother Karen Palm drove to his house in Wellington that morning and that the two of them drove to his sister Laura Vojtko's house in Grafton around 8:30 a.m. He testified that he and his mother stayed at Ms. Vojtko's house until after noon, at which time he returned home. Mr. Stanley further testified as follows. His mother left, and he entered his home and used the bathroom. He then went to the kitchen where he was eating some cheese when his son Conner ran upstairs from the basement and informed him that his girlfriend's father (Todd Martin) called to say that the police just reported that Mr. Stanley was on Whitehead Road waving a gun. Mr. Stanley spoke on the phone with Mr. Martin who wondered how Mr. Stanley could have been waving a gun in a location eight to ten miles away a mere two minutes earlier. Mr. Martin then drove to Mr. Stanley's house.

{¶17} Mr. Stanley testified that Officer Jeff Shelton of the Wellington Police Department arrived at his home. They talked for 20 minutes. Deputies arrived at the home later and questioned Mr. Stanley for approximately one and a half hours, although they did not question Mr. Martin who remained at the Stanley home. Mr. Stanley had no further interaction with law enforcement regarding the alleged gun-waving incident and no charges were filed. He presented a copy of an incident report in which a comment attributed to Deputy Figueroa noted that Wellington police went to Mr. Stanley's house where Mr. Stanley was "in the car." Mr.

Stanley noted that it is unknown who wrote that report. He further noted that the Wellington police officer who allegedly found him in his car that day did not testify.

{¶18} Mr. Stanley denied being on Whitehead Road on January 27, 2011, although he admitted that he and his mother passed Mr. Smith on State Route 18 that day as they returned to Wellington. He denied violating the mutual restraining order at any time.

{¶19} Conner Stanley is Mr. Stanley's 18-year old son. He testified that he did not have to attend his high school vocational program on January 27, 2011, so he was home when Mr. Martin called between 12:00 and 12:30 p.m. about a report he had just heard over a police scanner regarding Mr. Stanley. Conner knew his father had been out with his grandmother, but he heard his father arrive home. Conner ran upstairs from the basement to find Mr. Stanley in the kitchen. A police officer arrived within 15 minutes. Mr. Martin arrived shortly thereafter, followed by two deputies.

{¶20} Todd Martin testified that he was listening to a police scanner after noon on January 27, 2011, when he heard a report that Mr. Stanley was on Whitehead Road in Lagrange, waving a gun. He called Conner Stanley five to ten minutes later and also spoke with Mr. Stanley during the same phone call. Mr. Martin testified that it takes 30-40 minutes to drive from Lagrange to Wellington and that it is impossible to get from one location to the other in five to ten minutes. Mr. Martin arrived at the Stanley home fifteen to twenty minutes later. Officer Shelton of the Wellington Police Department was talking to Mr. Stanley inside the house. The deputies arrived later and would not listen to him when he tried to talk to them.

{¶21} Laura Vojtko testified that her brother Mr. Stanley and her mother Karen Palm arrived at her home in Grafton around 8:30 a.m. on January 27, 2011, and left around noon. She further testified that she stayed at Mr. Stanley's home from the afternoon of January 28, 2011,

until the evening of January 30, 2011, to watch her brother's teenage children while he was in Pennsylvania for the weekend.

{¶22} Karen Palm is Mr. Stanley's mother. She testified that she drove from her home in Oberlin on January 27, 2011, to her son's home in Wellington, arriving around 8:00 a.m. She testified that she and her son left his home soon after her arrival and drove to her daughter Laura Vojtko's home where Mr. Stanley used his sister's internet service to do some work. She testified that she accompanied her son in part to be a witness, implying that unfounded allegations had been lodged against her son in the past. Mrs. Palm testified that she and her son left her daughter's home around noon and returned to Mr. Stanley's home at which time she immediately left. Finally, she testified that she helped her daughter babysit Mr. Stanley's children from January 28 to 30, 2011, while he was in Pennsylvania.

{¶23} A review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Mr. Stanley. Moreover, our review compels this Court to conclude that the trial court did not lose its way and commit a manifest miscarriage of justice in finding that Mr. Stanley violated the mutual restraining order as alleged on January 27, 2011. Mr. Stanley's wife was living with Mr. Smith, and the parties had a recent history of harassing one another which resulted in a mutual restraining order. Mr. Stanley admitted that he saw Mr. Smith on the roadway after returning from his sister's house that early afternoon. Two witnesses testified that Mr. Stanley was on Whitehead Road in the morning, although others testified that he was at his sister's house at the time. Even if Mr. Stanley went to his sister's house in the morning, Mr. Smith testified that the incidents in his driveway and near his home occurred at a time when Mr. Stanley admitted he would no longer have been at his sister's house. Mrs. Palm left her son's home immediately after they arrived after leaving Mrs. Vojtko's house at noon, so

she had no knowledge regarding whether Mr. Stanley remained at his home or not. Although Mr. Martin testified that it takes 30 to 40 minutes to drive from Wellington to Lagrange, he also indicated in his conversation with Mr. Stanley that Whitehead Road was only eight to ten miles from Mr. Stanley's home. Mr. Martin admitted that he waited as long as ten minutes after hearing the report on the police scanner before calling Mr. Stanley's son about the alleged incident. The incident report that Mr. Stanley presented to the trial court indicates that the police officer who was dispatched to investigate the incident found Mr. Stanley in his car.

**{¶24}** This Court will not overturn the trial court's judgment on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, ¶ 22.

**{¶25}** The weight of the evidence supports the conclusion that Mr. Stanley violated the mutual restraining order on January 27, 2011. Accordingly, the trial court's finding to that effect was not against the manifest weight of the evidence. Mr. Stanley's assignment of error is overruled in regard to the January 27, 2011 violation.

III.

**{¶26}** Mr. Stanley's assignment of error is sustained as to the trial court's finding that he violated the mutual restraining order on January 28, 2011, and the imposition of a separate sanction for that violation. His assignment of error is overruled as to the trial court's finding that he violated the mutual restraining order on January 27, 2011. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,<br>
reversed in part,<br>
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
CONCURS.

DICKINSON, J.
CONCURRING.

{¶27} I agree with the majority's disposition of this case, but write separately to explain how I believe it should be analyzed. I note that, in his brief, Mr. Stanley has argued that the evidence presented at trial was both "insufficient" to support the trial court's findings of fact and conclusions of law and that the court's decision is against the manifest weight of the evidence.

{¶28} "[A] review of the sufficiency of the . . . evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations." *State v. Harris*, 9th Dist. No. 25364, 2011-Ohio-4066, ¶ 25. Whether the trial court's decision is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶33. When a defendant argues that the trial court's decision is against the manifest weight of the evidence, however, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that [the decision] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

{¶29} "Inasmuch as a court cannot weigh the evidence unless there is evidence to weigh," the first step is to analyze Mr. Stanley's sufficiency argument. *Whitaker v. M.T. Auto. Inc.*, 9th Dist. No. 21836, 2007-Ohio-7057, ¶ 13. Regarding the alleged January 28, 2011, violation, the majority correctly notes that "there was no evidence presented at the hearing regarding any screwdriver." Because there was "no" evidence to support the trial court's conclusion that Mr. Stanley violated the protection order on January 28, 2011, the court's finding of contempt must be reversed as not supported by sufficient evidence. Regarding the alleged January 27, 2011, violation, there was some evidence that Mr. Smith violated the contempt order that day. The court did not lose its way and create a manifest miscarriage of justice by choosing to believe Mr. Smith's version of the facts over the version recounted by Mr. Stanley and Mr. Martin. I, therefore, agree that the trial court's decision regarding the January 27, 2011, violation is not against the manifest weight of the evidence.

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

JOHN S. HAYNES, Attorney at Law, for Appellee.