[Cite as *R.T. v. J.T.*, 2015-Ohio-4418.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

J.T.

    Appellee

    v.

R.T.

    Appellant

C.A. No.    14CA0061-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    13 CV 0210

DECISION AND JOURNAL ENTRY

Dated: October 26, 2015

CARR, Judge.

{¶1}  Appellant R.T. ("Mother") appeals the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, that issued a domestic violence civil protection order against her, naming her three children as the protected parties. This Court reverses and remands.

I.

{¶2}  J.T. ("Father") and Mother are the parents of three children: a son, T.T.; and two daughters, L.T. and E.T. The children were 13, 11, and 7 years old, respectively, at the time relevant to this matter. Mother and Father were divorced and the custody of the children was parsed pursuant to a shared parenting plan under which Mother was the residential parent for school purposes.

{¶3}  After receiving a call from L.T.'s school regarding an incident, Father filed a petition for a domestic violence civil protection order on behalf of L.T., seeking relief on behalf

of all three children.  Father alleged that L.T. reported to a school counselor that Mother threw a glass mug at L.T. during a heated argument, and the mug bounced off the wall and hit L.T. in the head.  Father made no allegations with regard to T.T. and E.T., although he requested that the court temporarily allocate parental rights and responsibilities for the care of all three children and suspend Mother's visitation pending a full hearing on the petition.  The domestic relations court issued an ex parte protection order ordering for a period of one year, among other things, that Mother stay 500 feet away from Father and the three children, that she not have any contact with the children, that Father be designated as the temporary legal custodian and residential parent of the three children, and that Mother's visitation with the children be suspended.  The court scheduled the matter for a full hearing.

{¶4}    After a full hearing before the magistrate, the domestic relations court issued a domestic violence civil protection order against Mother, naming all three children as protected persons.  The court ordered, among other things, that Mother would not have any contact with the children, except that Mother was permitted to "exercise parenting time in public places as agreed by [the] parties.  Such contact shall be no less than three days per week and no less than two hours in duration."  The protection order temporarily allocated physical custody of the children to Father pending post-decree disposition of parental rights in case number 09DR0266, the parties' divorce action.

{¶5}    Mother obtained counsel for the first time after the domestic violence civil protection order was issued.  Through counsel, she filed timely objections to the order.  Mother did not file a supplemental brief in support, but the trial court held a hearing on the objections.  Although there is no transcript of that hearing in the record, the trial court's judgment entry indicates that both Mother and Father and their respective attorneys attended the hearing on

Mother's objections. The domestic relations court noted that Mother had challenged the issuance of the domestic violence civil protection order on the basis that it was against the manifest weight of the evidence. The trial court overruled Mother's objections and found that "[Father] showed by a preponderance of the evidence that [Mother] committed acts of domestic violence as defined by R.C. []3113.31 by recklessly causing bodily harm and placing the minor children in fear of imminent bodily harm through a continuing pattern of excessively aggressive and violent conduct." The domestic relations court reaffirmed its prior domestic violence civil protection order. Mother filed a timely appeal in which she raises one assignment of error for review.

{¶6} As a preliminary matter, this Court notes that, although the domestic violence civil protection order has expired, Mother's appeal is not moot. Because Mother may be subject to adverse collateral consequences as a result of having had a protection order issued against her, her challenge to the propriety of the imposition of the now-expired order is not moot. *See D.R. v. J.R.*, 9th Dist. Summit No. 26743, 2013-Ohio-2987, ¶ 9 (noting that "collateral consequences can include, but are not limited to, the effect on one's credit rating, the ability to drive certain vehicles, the ability to obtain a weapons permit, and the ability to obtain employment."). Accordingly, this Court addresses the substantive issues raised in this appeal.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN FINDING THAT ANY OF THE THREE CHILDREN WERE VICTIMS OF DOMESTIC VIOLENCE IN NEED OF A [DOMESTIC VIOLENCE CIVIL PROTECTION ORDER].

{¶7} Mother argues that the domestic relations court's finding that a domestic violence civil protection order was warranted in this case was against the manifest weight of the evidence.

This Court agrees. She, moreover, argues that the trial court erred by allowing Father to present hearsay evidence.

{¶8} To the extent that Mother argues that the trial court erred by admitting hearsay evidence, we decline to address that issue.[1] Mother failed to object to the admission of any of Father's evidence during the full hearing.[2] Moreover, she failed to raise the issue of hearsay by way of objections to the magistrate's decision. As Mother failed to raise the issue below, she has forfeited the issue on appeal; and we decline to address it. *White v. Summa Health Sys.*, 9th Dist. Summit No. 24283, 2008-Ohio-6790, ¶ 24.

{¶9} When reviewing the trial court's decision to issue a civil protection order, this Court applies the civil manifest weight of the evidence standard of review. *Donovan v. Donovan*, 9th Dist. Lorain No. 11CA010072, 2012-Ohio-3521, ¶ 5, citing *Wohleber v. Wohleber*, 9th Dist. Lorain No. 10CA009924, 2011-Ohio-6696, ¶ 7. As we wrote in *Donovan*:

> The standard encompasses both a legal sufficiency and manifest weight determination. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11-12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997). *See also Smith v. Stanley*, 9th Dist. Lorain No. 11CA009997, 2012-Ohio-2828, ¶ 5-7 (*Eastley* applied to appeal from the violation of a mutual protection order). "With respect to sufficiency of the evidence, 'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *Thompkins* at 386, quoting *Black's Law Dictionary* 1433 (6th Ed.1990). Weight, on the other hand, tests the believability of the evidence offered and "concerns 'the inclination of the greater amount of credible evidence, offered in a

---

[1] We remain troubled, however, by Husband's nearly exclusive reliance on hearsay evidence in support of his petition on behalf of the children. The record contains no testimony by any of the children regarding the imposition of bodily injury or any threat of imminent serious physical harm to the persons sought to be protected. Rather, Father presented the testimony of others including himself who reported statements the children allegedly made.

[2] We note that, while Father was represented by counsel at the hearing, Mother was not. In his appellate brief, Father does not argue that Mother has forfeited the issue on appeal for failure to object below. Instead, Father presents an ad hominem argument that Mother's evidence consisted of her testimony regarding things the children and others had reported to Mother.

trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's* at 1594.

*Donovan* at ¶ 5.

**{¶10}** Before the trial court may grant a domestic violence civil protection order pursuant to R.C. 3113.31, it must have found "'that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence.'" *Chafin v. Chafin*, 9th Dist. Lorain No. 09CA009721, 2010-Ohio-3939, ¶ 7, quoting *Felton v. Felton*, 79 Ohio St.3d 34, 42 (1997).

**{¶11}** R.C. 3113.31(C) allows a person to seek a domestic violence civil protection order on his own behalf or on behalf of a family or household member by filing a petition with the appropriate court. The domestic relations court constituted the proper forum for this matter. *See id.* Children of the respondent/Mother constituted "family or household member[s]." R.C. 3113.31(A)(3)(a)(ii). The statute requires that the petition contain or state all of the following:

> (1) An allegation that the respondent engaged in domestic violence against a family or household member of the respondent, including a description of the nature and extent of the domestic violence;
>
> (2) The relationship of the respondent to the petitioner, and to the victim if other than the petitioner;
>
> (3) A request for relief under this section.

R.C. 3113.31(C).

**{¶12}** R.C. 3113.31(A)(1) states:

"Domestic violence" means the occurrence of one or more of the following acts against a family or household member:

(a) Attempting to cause or recklessly causing bodily injury;

(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code;

(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(d) Committing a sexually oriented offense.

**{¶13}** The domestic relations court found by a preponderance of the evidence that Mother committed domestic violence against L.T. by "recklessly causing bodily harm" (R.C. 3113.31(A)(1)(a)), and against all three children by "placing [them] in fear of imminent bodily harm through a continuing pattern of excessively aggressive and violent conduct" (R.C. 3113.31(A)(1)(b). Accordingly, we constrain our review to the relevant subsections.

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C).

**{¶14}** Bodily injury encompasses "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3) (defining "physical harm to persons").

**{¶15}** "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "Serious physical harm" is defined as any of the following:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

**{¶16}** Within the context of a domestic violence civil protection order, this Court recognizes "imminent" to mean "ready to take place," "near at hand," or menacingly near." *B.C. v. A.S.*, 9th Dist. Medina No. 13CA0020-M, 2014-Ohio-1326, ¶ 21. In determining imminence of the threat, this Court uses a subjective and objective test, considering "both the totality of the circumstances, as well as the victim's state of mind[.]" *Chafin* at ¶ 22. While the respondent's history with the victim is relevant to the reasonableness of the victim's fear, "fear of imminent serious physical harm may not be determined by incidents of prior domestic violence absent an initial, explicit indication that she was in fear of imminent serious physical harm on the date contained in the petition." *B.C.* at ¶ 21, quoting *Chafin* at ¶ 22. In essence, "the critical inquiry is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm[.]" (Internal quotations omitted) *B.C.* at ¶ 21.

**{¶17}** In his petition for a domestic violence civil protection order, Father alleged that Mother threw a glass at L.T., and that the glass bounced off the wall and hit L.T. in the head. Father further alleged that Mother told the children that "children services" was coming to take them away.

**{¶18}** With regard to the allegation of domestic violence against T.T. and E.T., the petition was deficient on its face. Even if Mother told the children that a child protective agency was "coming to take them away[,]" such an act by Mother could not rise to the level of attempting to cause or recklessly causing bodily injury, or of placing the children by threat of force in fear of imminent serious physical harm. Accordingly, Father's petition did not comport

with the requirements of R.C. 3113.31(C)(1) in regard to T.T. and E.T. *See Williamson v. Williamson*, 180 Ohio App.3d 260, 2008-Ohio-6718, ¶ 38 (2d Dist.). Assuming arguendo, however, that the petition was sufficient to allege that Mother had committed an act of domestic violence against all of the children, this Court concludes that such a finding was against the manifest weight of the evidence.

{¶19} Father filed his petition on October 4, 2013. At the full hearing on the petition, Father testified that he received a call from L.T.'s school on October 2, 2013, informing him that L.T. had told a counselor that she had an argument with Mother and that L.T. got hit in the head with a tea cup that bounced off the wall. He testified that he filed a petition for a protection order based on that event because L.T. was afraid to go home to Mother's home because she feared repercussions by Mother as a result of L.T.'s telling the counselor about the incident. Father testified that he sought protection for the other two children as a precautionary measure based on his belief that Mother might direct her anger at them if L.T. was not living in the home.

{¶20} Father testified that there had been seven or eight reports made to the child protective agency during the past four years; but, with the exception of two instances, he did not explain the nature of the reports or submit any evidence documenting such reports or the dispositions thereof. The only details Father provided were as follows. On one occasion, the agency investigated a claim, found that it was not substantiated, but determined that Mother's "house was high risk." There is no evidence regarding the nature of the risk. On another occasion, Father made an allegation of neglect against Mother because she had failed to take L.T. to get glasses. Father testified that he ultimately made an appointment for L.T. but, because Mother had not called the office, he was accused of Medicaid fraud.

{¶21} Father testified that there were several reports made to the police regarding Mother. He submitted four police reports into evidence. A report on April 17, 2012, eighteen months before Father filed his petition, indicated that the police investigated Mother's hitting T.T. on the hand with a hair brush after he refused to "fix his hair." The officer investigating the matter wrote that he told Father that the "incident would most likely be considered discipline[.]" A May 14, 2013 report stated only that L.T. was afraid that Mother was going to hit her. The June 18 and August 6, 2013 reports involve Husband's current wife's allegation that Mother threatened to run her over after an argument and that Mother would not comply with requests to contact Father and his wife only via email, rather than by text or phone. Mother reported to the police that she did not have email on her phone and did not have a computer. She told the police that she had the right to check on the children when they were with Father. Nevertheless, the officer advised her to refrain from calling or texting.

{¶22} Father testified that a guardian ad litem had been appointed for the children two years ago for purposes of the parties' divorce action. He testified that the guardian spoke with the children and both parents and submitted her report. Father did not submit the report into evidence; accordingly, the substance and context of the report are unknown. It is not possible to tell from the record whether the guardian ad litem had any involvement with the family with regard to the incident underlying Father's petition for a protection order.

{¶23} Father testified that the children told him about several incidents when Mother took her anger out on them when they failed to clean their rooms or when they mentioned they wanted to stay with Father. The incidents involved Mother's throwing things like hair brushes, costume jewelry, and magazines. According to Father, these objects sometimes hit the children. Father testified that L.T. tells him frequently that she does not feel safe at Mother's home. He

testified that T.T. has also told him that he sometimes does not feel safe with Mother when she is mad.

{¶24} Father testified that he believes the children are in danger if they remain with Mother because the situation has gotten progressively worse in her home. He cited "little things" like yelling, hitting with belts, and "smacking" hard enough to leave hand prints, to throwing objects and hitting the children with them. He testified that he had no opportunity to observe any violent behavior by mother during their ten-year marriage because they only lived together for two-and-a-half years because Mother had gotten restraining orders against Father.

{¶25} Father admitted that there have been issues in his home that the children have disclosed to Mother. He further admitted that there have been police reports involving E.T. and Father's wife, but that none involved violence. Finally, Father testified that pursuant to the parties' divorce decree, Mother was the residential parent of the children. He denied filing the petition as an attempt to get custody of the children.

{¶26} Father's wife Susan testified that her relationship with Mother is "back and forth." She admitted that Father's children test one's patience. She further admitted that she has never seen Mother hit or throw anything at the children. Susan testified that she believes that the children require protection to prevent future incidents. When asked for clarification, she admitted that E.T. is not really in danger and "hardly gets picked on[,]" that T.T. is not as much of a target, but that L.T. is Mother's main target.

{¶27} Mother testified regarding her relationship with her daughter. She described the then eleven-year old L.T. as a very defiant and difficult child who frequently behaved "like a two year old." She testified that L.T. "fabricates a lot" and that Father has even admitted this to Mother and her boyfriend. Mother further testified that L.T. is disruptive in social situations

such as church, and that she frequently picks on her siblings. She described an incident the previous summer when a neighbor called the police because L.T. was screaming that someone was killing her. Mother's air conditioner had broken, and L.T. was throwing a tantrum and screaming because she was hot. L.T. kicked a hole in the wall because she could not cope with the heat. Mother testified that when the officer arrived he told her that she could spank and discipline L.T. Mother testified that she takes L.T. to counseling and that she herself sees a counselor and takes parenting classes to help the situation.

{¶28} Mother testified regarding the incident underlying Father's petition. On the day of the incident, L.T. was playing with $10 she had received as a gift. Mother testified that she asked L.T. for the money so she could put it in a safe place. L.T. refused and accused Mother of wanting the money for herself. L.T. continued being disrespectful, so Mother told her she would not be allowed to go on a class trip if she maintained a bad attitude. Mother testified that she was doing dishes at the time and that a tea cup she was washing flew out of her hand and hit the wall. Mother admitted that the cup left a hole in the wall where the bottom of the cup made contact. The picture of the tea set submitted by Mother shows a small, flat tea pot and small cups without handles. Two other photographs show an indentation in the wall where Mother claimed the bottom of the cup hit the wall. It is not possible to determine from the photographs the size or extent of the damage to the wall. Mother testified that a piece of the cup landed on the child after the cup hit the wall. L.T. accused Mother of throwing the cup at her, and Mother apologized, saying she did not mean to do it.

{¶29} Mother testified that later that day she received a call from L.T.'s school, informing her that the child was afraid to go home and that the school had called Father. Mother went to the school where she was able to speak with and calm L.T. down. L.T. admitted to

Mother that she knew that the incident with the tea cup was an accident. Mother testified that both the principal and a counselor spoke with L.T. and asked her if she felt safe going home with Mother. L.T. responded that she did, and Mother took her home.

{¶30} Because of L.T.'s disclosure to the school counselor, the school notified the local child protective agency. A caseworker coordinated with Mother to select a time for a home visit. When the caseworker was called away on another emergency, Mother took the children shopping. Mother's boyfriend called her and told her to return home immediately, because a sheriff's deputy was there with an order to remove the children. Mother returned home immediately. All three children were upset at the prospect of being removed from Mother's home. T.T. accused L.T. of causing the situation, and then T.T. ran to hide from the deputy.

{¶31} Mother testified that she has never harmed L.T. She admitted that she yells at the children, spanks them, and takes away privileges to discipline them. She asserted that the children are happy and healthy in her care, and that she poses no threat to their safety. Mother opined that Father, who was awarded much less companionship time with the children under the parties' shared parenting plan, is attempting to use this petition for a protection order as a means to obtain custody where he has not been able to attain such results within the context of the parties' divorce action.

{¶32} Mother's boyfriend Matthew testified that he had been dating Mother for six months as of the time of the hearing. Although he does not live with Mother, he testified that he spends time in her home almost every day. He testified that L.T. acts out with Mother and has been disrespectful to him. Matthew testified that Mother addresses L.T.'s issues and behavior by sitting with her and talking, by taking away privileges, and by engaging her in church and counseling activities. He has never seen Mother throw anything at any of the children.

{¶33} Finally, Mother's sister Tina testified that she spends a lot of time with Mother and her children, and that she has offered advice to Mother regarding how to cope with L.T.'s bad attitude. The children also discuss issues with their aunt. Tina testified that she has witnessed L.T. act out towards Mother. In the eight years Mother has raised the children effectively as a single parent, Tina never saw Mother show anger or physical violence towards the children.

{¶34} At the conclusion of the presentation of evidence at the hearing, the magistrate asked Father what he was seeking in this case. The magistrate emphasized that she could not order a change in custody in these proceedings, and that any such custodial modification would have to occur within the context of the parties' divorce action as a post-decree matter. Father replied that he recognizes the mutual love between Mother and the children. He asserted that he, therefore, wanted the children to still see Mother, although he requested that Mother's visitation with L.T. be supervised. The magistrate told Father that she did not think he understood the limitations on her vis-à-vis these proceedings, and she reiterated, "I don't have the authority to make a custody or allocation of parental rights and times * * *. So I can't do supervised visitation * * *." Father's attorney then asserted that Father was seeking for all three children to remain protected parties based on Father's concerns arising out of what the children had told him.

{¶35} None of the children testified at the hearing. Moreover, no evidence was presented from any professional such as a nurse, counselor, or guardian ad litem, who might have interviewed or observed L.T. (or the other two children) after the incident. Father failed to present any evidence regarding any injury actually sustained by L.T. as a result of the tea cup having bounced off the wall and hitting her in the head. There was no evidence of any cut or

bruising to L.T.'s head. There was no evidence that L.T. experienced any physical pain as a result. In fact, the only evidence regarding L.T.'s reaction was Mother's testimony that L.T. was indignant and defiant. Based on a review of the record, Father did not meet his burden of proving by a preponderance of the evidence that Mother caused any bodily injury to L.T. While throwing a cup across the room close to another person rises to the level of recklessness, in the absence of any evidence regarding injury to the child, the trial court's finding that Mother recklessly caused bodily injury to L.T. was against the manifest weight of the evidence.

{¶36} Moreover, Father did not satisfy his burden of demonstrating by a preponderance of the evidence that Mother placed any of the children by the threat of force in fear of imminent serious physical harm. Even the trial court did not find the threat of *serious* physical harm, but rather only physical harm. There was evidence that Mother on occasion had thrown objects like costume jewelry, magazines, a hair brush, and in this case a tea cup, to get the children's attention or when they were misbehaving. There was no evidence that any of those incidents resulted or could have resulted in the type of harm that could be considered "serious." Moreover, such past acts by Mother do not demonstrate a reasonable belief by the children that they were in danger of imminent serious physical harm, "absent an initial, explicit indication that [the children] w[ere] in fear of imminent serious physical harm on the date contained in the petition." *See Chafin* at ¶ 22. There was no evidence presented that T.T. or E.T. witnessed the tea cup incident involving L.T., or that they expressed any fear on that date. Accordingly, there was no evidence of their fear of imminent serious physical harm on the date contained in the petition. In fact, Father did not even reference the other children in his narrative statement underlying the grounds for the petition. *See* R.C. 3113.31(C)(1).

**{¶37}** Father, moreover, failed to meet his burden of showing that L.T. expressed fear of imminent serious physical harm on the date of the incident.[3] Although L.T. disclosed the incident to a school counselor, L.T.'s alleged fears were not significant enough that school personnel shielded L.T. from Mother. It was not contested that both the school counselor and the principal asked L.T. if she felt safe going home with Mother, and the child confirmed that she did. Moreover, at the time of the incident, the evidence indicated that, rather than running away or hiding from Mother, L.T. continued yelling at Mother. Mother testified that the child was so defiant, in fact, that Mother threatened to take her to "juvey" after she returned from work that day so the child could talk with someone there about the ramifications of behaving in an unruly manner.

**{¶38}** Accordingly, the domestic relations court's finding that a domestic violence civil protection order was warranted in this case was against the manifest weight of the evidence. Mother's assignment of error is sustained.

## III.

**{¶39}** Mother's sole assignment of error is sustained. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

---

[3] This Court reiterates our concern that the trial court failed to make the requisite finding of fear of imminent *serious* physical harm as enunciated in the statute. It is not possible to determine whether the trial court inadvertently omitted a finding as to one of the necessary elements or whether it found that L.T. feared imminent physical harm but not serious physical harm. We further note our concerns regarding Father's presentation of arguably hearsay and double hearsay evidence and how the trial court was able to assess and accord credibility to Father under those circumstances. We decline to address these issues, however, as we have constrained our discussion to the issues raised below and in the appellate briefs.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
CONCURS.

HENSAL, P. J.
DISSENTING.

{¶40} I do not agree that the trial court's conclusion that mother committed an act of domestic violence against L.T. was against the manifest weight of the evidence. The majority claims that there was no evidence that L.T. suffered any injury from being struck by the piece of teacup. Father testified, however, that when he received a call from the school on the day of the

incident, L.T. told him that she was afraid to go home with Mother because "[s]he had already got hurt[.]" The magistrate was in the best position to assess the credibility of the witnesses and it specifically found Father's evidence more credible than Mother's. After a thorough review of the record, I do not believe this is the exceptional case in which this Court should exercise its power to reverse a judgment as against the manifest weight of the evidence. *See State v. Roper*, 9th Dist. Summit No. 27025, 2014-Ohio-4786, ¶ 15. I, therefore, respectfully dissent.

APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

JUSTIN MILLER, Attorney at Law, for Appellee.